**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

CAROLYN S. SPICER, )
)
    Plaintiff, ) **CIVIL ACTION**
)
v. ) No. 10-4024-MLB
)
RADNET, INC. and RADIOLOGY AND )
NUCLEAR MEDICINE PARTNERS, INC., )
)
    Defendants. )
                   )

**MEMORANDUM AND ORDER**

  This matter comes before the court on defendant RadNet Inc.'s ("RadNet") combined motion to dismiss for lack of jurisdiction and motion for summary judgment. (Doc. 23). The matter has been fully briefed and is ripe for decision (Doc. 24, 29, 33). The motion to dismiss is denied. The motion for summary judgment is granted.

**I. INTRODUCTION**

  This is an employment discrimination case. Plaintiff Carolyn Spicer makes claims against her former employer Radiology and Nuclear Medicine Partners, Inc. ("RNMP") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and the Kansas Age Discrimination in Employment Act ("KADEA"), K.S.A. 44-1111 et seq.

  RadNet asserts that this court lacks personal jurisdiction and moves to dismiss under Federal Rule of Civil Procedure 12(b)(2). Alternatively, RadNet asserts that is not responsible for the torts of an affiliated, but separate and distinct corporation and moves for summary judgment pursuant to Fed. R. Civ. P. 56(c).

**II. FACTS**

Several of the facts are controverted. The court will consider any controverted fact in light most favorable, along with all favorable inferences, to Spicer. See Hall v. United Parcel Serv., No. Civ. A. 992467-CM, 2000 WL 1114841, at *5 (D. Kan. July 31, 2000) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)). To the extent relevant, any factual disagreements between the parties will be noted.

<u>Defendant Corporations</u>

Both RadNet and RNMP are Delaware Corporations with their principal places of business in California. RadNet is a stockholder of RNMP, but not the sole stockholder. However, RadNet and RNMP are wholly separate companies with distinct boards and stockholders and both observe proper corporate formalities. RadNet has no ownership interest in RNMP, which is solely owned by a nonparty entity, RadNet Management, Inc. ("RadNet Management").

RNMP is registered with the State of Kansas to do business, but RadNet is not. RadNet owns no property and maintains no bank accounts in Kansas. RadNet has not designated an agent for service of process inside Kansas.

The parties dispute whether RadNet conducts business and holds itself out as conducting business in Kansas. The parties also dispute whether Spicer was employed by RadNet and whether RadNet maintains some degree of control over management and the day-to-day operations of RNMP.

<u>Spicer's Termination</u>

Spicer was employed with RNMP from September 27, 1999, to April

10, 2009. Spicer was 62 years old at the time she was terminated. Prior to her termination, Spicer contacted Human Resources Director Ruth Wilson at RadNet headquarters in California and expressed concerns regarding harassment.

On April 10, Spicer received a termination letter stating that she was "being terminated from [her] position at Radnet and [RNMP], as a result of a reduction in force." (Doc. 29-2 at 47). Spicer was instructed that in order to receive her severance benefit, she must sign the Separation and General Release Agreement (the "separation agreement"). The separation agreement was between RadNet, Radiologix, Inc., RadNet Management, and Primedex Health Systems (collectively "Employer") and Spicer. Spicer also received a letter from Blue Shield of California stating that it had received notice from RadNet that Spicer had been terminated.

### III. LEGAL STANDARD

Spicer asserts that the court has jurisdiction over RadNet based on the theory that RadNet and RNMP acted as a single employer in her termination. Spicer moves for the court to treat RadNet's motion to dismiss as one for summary judgment under Fed. R. Civ. P. 56 because the determination of whether RadNet was Spicer's employer operates as both a jurisdictional question and one on the merits.

The rule in the Tenth Circuit is that "the 'single employer' or 'integrated-enterprise' test for purposes of Title VII and the ADA's employee-numerosity requirement is a jurisdictional issue that must be resolved under Fed. R. Civ. P. 12(b)(1). Calvert v. Midwest Restoration Servs., No. 01-5201, 2002 WL 1023659, *3 (10th Cir. May 22, 2002); Hamilton v. Brad Systems, Inc., No. 04-2264-CM, 2006 WL

2522560, *9 (D. Kan. Mar. 24, 2006). On the other hand, when there is no dispute that the employer falls within the statutory definition of "employer" under Title VII, ADA, or ADEA, as it is here, and the only question is whether the plaintiff and the employer have an employment relationship, then the issue is one for summary judgment disposition. E.E.O.C. v. Thorman & Wright Corp., No. 06-2412-JWL, 2006 WL 3718070, *1 n. 1 (D. Kan. Dec. 15, 2006). "[W]hen subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 978 (10th Cir. 2002).

RadNet filed both a motion to dismiss under Rule 12(b)(2) and a motion for summary judgment. For purposes of this motion only, the court will assume that it has personal jurisdiction over RadNet[1] and proceed to the issue of whether RadNet was Spicer's employer. The standard for summary judgment under Fed. R. Civ. P. 56(c) applies.

The rules applicable to the resolution of this case are well-known and are only briefly outlined here. Fed. R. Civ. P. 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the

---

[1] The court finds that Spicer has alleged sufficient evidence in her complaint and affidavit to make a prima facie showing of personal jurisdiction over RadNet. On a motion to dismiss under 12(b)(2), the court must accept Spicer's allegations as true and resolve all factual disputes in her favor notwithstanding contrary positions by RadNet. Heating and Cooling Master Marketers Network, Inc. v. Contractor Success Group, Inc., 935 F. Supp. 1167, 1169 (D. Kan. 1996). Spicer alleges that she was employed and terminated by RadNet and further that RadNet was listed as an employer in the separation agreement. Additionally, Spicer alleges that RadNet holds itself out to doing business in Kansas in its SEC Form 10-K filing and website.

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**IV. ANALYSIS**

Spicer asserts that RadNet is liable for her wrongful termination because RadNet and RNMP acted as a single employer.

The "single-employer" or "integrated enterprise" test asks whether two nominally separate entities should in fact be treated as an integrated enterprise for purposes of liability under the ADEA. See Bristol v. Bd. of County Comm'rs of the County of Clear Creek, 312 F.3d 1213, 1218 (10th Cir. 2002) (stating that "[a] plaintiff who is the employee of one entity may seek to hold another entity liable by arguing that the two entities effectively constitute a single employer[]"); see also Tatum v. Everhart, 954 F. Supp. 225, 228 (D. Kan. 1997) (applying integrated enterprise test in Title VII and ADEA contexts).

> "Courts applying the single-employer test generally weigh four factors: '(1) interrelation of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control.'" <u>Bristol</u>, 312 F.3d at 1220. The third factor, centralized control of labor relations, is generally considered the most important. <u>Id.</u> However, "'[a]ll four factors ... are not necessary for single-employer status. Rather, the heart of the inquiry is whether there is an absence of an arm's length relationship among the companies.'" <u>Calvert</u>, 35 Fed. Appx. at 802 (quoting <u>Knowlton v. Teltrust Phones, Inc.</u>, 189 F.3d 1177, 1184 (10th Cir. 1999)).

<u>Hamilton</u>, 2006 WL 2522560 at 9-10.

<u>Interrelated Operations</u>

The first factor of interrelated operations includes seven indicia of interrelatedness that the court considers: "(1) combined accounting records; (2) combined bank accounts; (3) combined lines of credit; (4) combined payroll preparation; (5) combined switchboards; (6) combined telephone numbers; and (7) combined offices." <u>Tatum</u>, 954 F. Supp. at 228 (quoting <u>Eichenwald v. Krigel's Inc.</u>, 908 F. Supp. 1531, 1540, 1541 n. 8 (D. Kan. 1995)). Courts may also consider whether the two entities have common employees and a shared benefits program. <u>Rowland v. Franklin Career Services, LLC</u>, 272 F. Supp.2d 1188, 1201 (D. Kan. 2003).

Spicer alleges that interrelatedness is shown because RadNet and RNMP filed a combined SEC Form 10-K, which "comprises a single segment for financial reporting purposes." (Doc. 29 at 13). Spicer further alleges that RadNet's provides management and technical services to RNMP. RadNet is also the employer listed on the group health coverage offered to RNMP employees.

RadNet responds that the SEC filing is a collective filing among itself and its subsidiaries, including RadNet Management. RadNet

-6-

states that RadNet Management is the entity that has contracted with RNMP to provide management and technical services and owns the equipment that RNMP uses. RadNet further states that RadNet Management, as opposed to RadNet, maintains the contract with RNMP and leases the property out of which RNMP operates.

The court finds that Spicer has not shown sufficient evidence such that a reasonable jury could find that RadNet and RNMP had interrelated operations. Spicer does not controvert that RadNet and RNMP are incorporated separately and maintain their own distinct boards and stockholders. "[I]n cases of separate incorporation, the limited liability doctrine 'creates a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances'". Tatum, 954 F. Supp. at 229. Furthermore, other than the SEC filing, which is a collective filing between 10 different entities, Spicer has presented no evidence that RadNet and RNMP maintained combined accounting records, bank accounts, lines of credit, payroll preparation, switchboards, or offices.

The fact that RadNet supplies group health insurance coverage for RNMP employees is not determinative. See Florez v. Holly Corp., No. 04-2331, 2005 WL 3047965, *2 (10th Cir. Nov. 15, 2005) (citing Frank v. U.S. West, Inc., 3 F.3d 1357, 1364 (10th Cir. 1993) and noting that the Tenth Circuit "has already concluded that a parent company's actions as an administrator for a subsidiary's employee benefits program do not amount to 'excessive control ... over [the subsidiary's] employment practices[]'"). Spicer does not allege that RadNet controlled any other fringe benefits offered to RNMP employees.

Nor does Spicer allege that RadNet and RNMP shared employees. Most courts finding interrelatedness were presented with facts that the defendant entities transferred employees between each other and the parent corporation controlled the payroll and benefits of the subsidiary. See, e.g., E.E.O.C. v. Financial Assur., Inc., 624 F. Supp. 686, 690 (W.D. Mo. 1985).

Spicer has not shown sufficient evidence that a reasonable jury could find interrelatedness between RadNet and RNMP. See Praseuth v. Newell-Rubbermaid, Inc., 219 F. Supp. 2d 1157, 1181 (D. Kan. 2002) (noting that only in extraordinary circumstances will the presumption that a parent company is not the employer of a subsidiary's employees be overcome).

### Common Management

When considering the second factor, common management, the court examines whether the two entities have common directors and officers. Tatum, 954 F. Supp. at 229. It is relevant if the common officers are involved in management of personnel. Rowland v. Franklin Career Services, LLC, 272 F. Supp. 2d 1188, 1203 (D. Kan. 2003).

Spicer claims that RadNet and RNMP share two common officers and one common director. "Howard G. Berger, M.D. is the President and CEO of RadNet, and also the President and CFO of RNMP." (Doc. 29 at 14). Berger is also one of the seven directors of RadNet and the sole director of RNMP. "Jeffrey L. Linden, the Executive Vice President and General Counsel of RadNet, is the Vice President and Secretary of RNMP." (Doc. 29 at 14). Spicer asserts that there is a significant relationship between RadNet and RNMP because top-ranking officers occupy top positions at RNMP.

RadNet cites Rowland, for the proposition that two individuals who share common duties between RadNet and RNMP is insufficient to establish common management. 272 F. Supp. 2d at 1203. Rowland notes that "[o]ne common manager is insufficient to establish a disputed material fact under this prong of the integrated enterprise test." Id. RadNet also states that the majority of RadNet's officers and directors have no involvement with RNMP.

RadNet has five officers and seven directors whereas RNMP has two officers and one director. The two officers/director at RNMP are also officers/directors at RadNet. However, Spicer does not allege that Dr. Berger and Linden controlled the personnel management of both RadNet and RNMP or were regularly consulted regarding business matters. Spicer has presented no evidence that Dr. Berger and Linden were even contacted regarding her termination. Therefore, the court finds that the fact that there were two common officers and one common director, without more, does not establish a material dispute for purposes of the common management prong.

### Centralized Control

The third factor is centralized control.

> To establish centralized control, the parent corporation's control of the day-to-day employment decisions of the subsidiary must be shown. Day-to-day control must actually be exercised; potential control is not sufficient. Courts have found centralized control when the parent was involved in the subsidiary's hiring decisions, when a common officer had approved all hiring decisions of the subsidiary, and when the parent has issued personnel policies and also fired at least one subsidiary employee. The Tenth Circuit has emphasized the importance of a plaintiff's actual experience as an employee with respect to whether the parent corporation hired the plaintiff, fired the plaintiff, or supervised the plaintiff's work on a regular, daily basis.

Tatum, 954 F. Supp. at 229.

Spicer asserts that RadNet issued rules regarding RNMP's employment practices because it distributed a Corporate Compliance Manual (the "manual"), which was relevant to the day-to-day operations at RNMP. Spicer also points to her communications with RadNet's Vice President and Director of Human Resources Ruth Wilson regarding complaints of harassment. Ms. Wilson initially informed Spicer that she would conduct an investigation. Later, Ms. Wilson informed Spicer that site managers "have been designated by RadNet executive management as the responsible operations personnel for her region." (Doc. 29 at 16). Spicer contends that Ms. Wilson's response is evidence of the control RadNet had over RNMP because it shows that the site managers reported to the chief operating officers, who in turn report to the Chief Operating Officer.

Spicer further asserts that RadNet was involved in her termination because of the separation agreement that accompanied her termination letter signed by site manager David Smith. The separation agreement stated that RadNet, Inc., Radiologix, Inc., RadNet Management, and Primedex Health Systems were collectively referred to "EMPLOYER" in the separation agreement.

RadNet responds that the manual was produced and distributed by RadNet Management. Additionally, RadNet Management was in charge of the management responsibilities and day-to-day employment policies implemented by the manual. RadNet further responds that the termination letter was signed by a RadNet Management site mangager and that it only included itself in the separation agreement so that it would be specifically included among the entities that Spicer was

releasing from liability.

The court finds that there is insufficient evidence such that a reasonable jury could find that RadNet controlled the day-to-day operations at RNMP. Likewise, there is insufficient evidence that RadNet was involved in Spicer's termination.

The manual, which was provided by Spicer, lists "RADNET MANAGEMENT, INC. POLICIES AND PROCEDURES" in the header on top of every page. The first sentence in the introduction states "RadNet Management, Inc. ("RadNet") is dedicated to creating an environment that provides the highest quality health care to patients. (Doc. 29-2 at 7). The court has not found a provision in the manual that involves RadNet, nor has Spicer pointed to any specific provision.

Contrary to Spicer's position that Ms. Wilson's response is evidence of RadNet's control over RNMP, the court finds that her response shows RadNet's delegation of authority over employment matters to the site managers at RNMP. Ms. Wilson states that Spicer's site managers are responsible to "identify, implement, and manage the processes and procedure that ensure the smooth operations of your local business, in accordance with RadNet objectives as they are prescribed to them by their management ... ultimately, decisions regarding operations are solely at their discretion and therefore it is important fo you to ensure that you follow their directions effectively and make any appropriate adjustments in a professional manner." (Doc. 29-2 at 46). It appears from the e-mail that Ms. Wilson was informing Spicer that her site managers were ultimately responsible for her employment in accordance to the policies and procedures proscribed by management, which is governed by RadNet

-11-

Management's policies and procedures. No where in the e-mail does Ms. Wilson state that RadNet is responsible for the day-to-day operations or the policies that RNMP's site managers follow.

Nor is the court persuaded by Spicer's argument regarding the separation agreement. The fact that RadNet arbitrarily included itself in the separation agreement for protection is not evidence of RadNet's involvement in Spicer's termination. There is no evidence that Radiologix, Inc. and Primedex Health Systems were involved in Spicer's termination, yet they were also included in the separation agreement.

Spicer has not presented any evidence that RadNet actually controlled the day-to-day operations at RNMP or that it was involved in her termination. Therefore, there is no disputed material fact as to centralized control.

### Common Ownership

The common ownership or financial control factor is the least important. Tatum, 954 F. Supp. at 229. The mere fact that the parent corporation is the sole shareholder of the subsidiary is insufficient to establish parent liability. Frank v. U.S. West, Inc., 3 F.3d 1357, 1364 (10th Cir. 1993).

Spicer alleges that RNMP is an indirect wholly-owned subsidiary of Radnet. This coupled with the fact that one of RadNet's directors, Dr. Berger, is the sole director of RNMP is evidence of financial control.

RadNet responds that RadNet has no direct ownership interest in RNMP, which is solely owned by RadNet Management.

Spicer does not dispute that RadNet Management is the sole owner

of RNMP. Radnet is a stockholder of Radnet Management, but not the sole stockholder. While Spicer alleges that Dr. Berger's position possesses a great deal of control over the direction of RNMP's business and finances because he is the sole director, she does not provide the court with any specific evidence to support her position. Furthermore, this argument was considered in the common managers and centralized control factors and found to be insufficient to overcome the presumption of limited liability.

## V. CONCLUSION

The court finds that there is insufficient evidence such that a reasonable jury could find that Spicer has overcome the presumption of limited liability. Spicer has not presented sufficient "'evidence of control suggesting a significant departure from the ordinary relationship between a parent and its subsidiary-domination similar to that which justifies piercing the corporate veil-is sufficient to rebut this presumption, ... and to permit an inference that the parent corporation was a final decision-maker in its subsidiary's employment decisions.'" Rowland, 272 F. Supp. 2d at 1201. Therefore, RadNet was not Spicer's employer and summary judgment is appropriate.

RadNet's motion to dismiss under Fed. R. Civ. P. 12(b)(2) is denied. (Doc. 23). RadNet's motion for summary judgment under Fed. R. Civ. P. 56(c) is granted. (Doc. 23). The clerk is directed to enter judgment in favor of Radnet and against Spicer. Pursuant to Fed. R. Civ. P. 54(b), the court certifies that there is no just reason for delay. The claims against RNMP, such as they are, can be resolved by independent analysis of the facts and law pertaining to those claims.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this 20th day of December 2010, at Wichita, Kansas.

s/ Monti Belot

Monti L. Belot

UNITED STATES DISTRICT JUDGE