# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CAROLYN SPICER,           )
                          )
        Plaintiff,       )
                          )     **CIVIL ACTION**
v.                          )
                          )     **No. 10-4024-KHV**
RADNET, INC. and RADIOLOGY AND  )
NUCLEAR MEDICINE IMAGING    )
PARTNERS, INC.,           )
                          )
        Defendants.     )
_____)

## MEMORANDUM AND ORDER

Carolyn Spicer brings suit against Radiology and Nuclear Medicine Imaging Partners, Inc. ("RNMIP") under the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), and the Kansas Age Discrimination in Employment Act, K.S.A. § 44-1113 ("KADEA").[1] Plaintiff alleges age discrimination and retaliation for opposing defendant's unlawful discriminatory practices. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #51) filed January 20, 2011.

As explained in prior orders, plaintiff did not timely respond to defendant's motion. See Order (Doc. #68) filed May 5, 2011; Order To Show Cause (Doc. #64) filed April 27, 2011. On April 26, 2011, plaintiff filed an untimely response which the Court struck. See Doc. #68. The Court therefore treats defendant's motion as uncontested. See D. Kan. Rule 7.4(b).

## Legal Standards

Ordinarily, the Court would grant the motion without further notice, D. Kan. Rule 7.4(b), but

---

[1]    Plaintiff's complaint also named RadNet, Inc. as a defendant, but the Court previously granted summary judgment in favor of RadNet, finding that it was not plaintiff's employer. See Memorandum And Order (Doc. #47) filed December 20, 2010.

a party's failure to respond to a summary judgment motion is not by itself a sufficient basis on which to enter judgment. <u>Reed v. Bennett</u>, 312 F.3d 1190, 1194-95 (10th Cir. 2002). Rather, the Court must determine whether judgment for the moving party is appropriate under Rule 56, Fed. R. Civ. P. <u>Id.</u>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Vitkus v. Beatrice Co.</u>, 11 F.3d 1535, 1538-39 (10th Cir. 1993). A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff;" it requires more than a mere scintilla of evidence. <u>Liberty Lobby</u>, 477 U.S. at 252. A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." <u>Id.</u> at 248.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Justice v. Crown Cork & Seal Co.</u>, 527 F.3d 1080, 1085 (10th Cir. 2008). By failing to file a timely response, plaintiff has waived the right to respond to or controvert the facts that defendant asserts in its summary judgment motion. <u>Reed</u>, 312 F.3d at 1195. The Court therefore accepts as true all material facts asserted and properly supported in the summary judgment motion, but will grant summary judgment only if those facts entitle defendant to judgment as a matter of law. <u>Id.</u> (citations omitted). When applying this standard, the Court must view the factual record in the light most favorable to plaintiff, the nonmoving party. <u>Duvall v. Ga.-Pac. Consumer Prods., L.P.</u>, 607 F.3d 1255, 1260 (10th Cir. 2010); <u>see</u> <u>Ricci v. DeStefano</u>, 129 S. Ct. 2658, 2677 (2009).

## <u>Facts</u>

The following facts are uncontroverted.

Defendant contracts with roughly 30 radiologists at two centers in Topeka, Kansas. Its Calendar Coordinators are responsible for managing the schedules of the radiologists. David Smith Depo. at 9:13-16. Plaintiff began working for defendant on September 27, 1999. <u>Pretrial Order</u> (Doc. #50) filed January 10, 2011 at 4. Before defendant terminated her employment on April 10, 2009 at the age of 62, plaintiff worked as a Calendar Coordinator in the Physician Support Department. <u>Id.</u>

At the time defendant hired plaintiff, it cross-trained at least two employees as Calendar Coordinators so that if one employee was unavailable, another employee could cover. Smith Depo. at 51:2-14. When defendant hired plaintiff, Connie Hiebert cross-trained her as a Calendar Coordinator. <u>Id.</u> at 85:24-86:21. At the time, the task of keeping the calendar was a manual, paper-intensive process. <u>Id.</u> at 51:14-16. In August of 2005, Hiebert retired. At some point shortly thereafter, defendant transferred Kelly Bushey, age 39, from its business office to plaintiff's department and asked plaintiff to cross-train her as a Calendar Coordinator. Pl. Depo. at 11:9-11, 24:18, 24:22; Smith Depo. at 100:16-102:13.

Jim Loveless supervised plaintiff from as early as March of 2005 through March of 2007. On each of plaintiff's performance reviews for 2005 through 2007, Loveless gave plaintiff an overall performance rating of three – "meets expectations" – on a scale of one to five. Doc. #52, Ex. E, G and I.[2] In each of the reviews he made very positive statements about plaintiff's performance and

---

[2] For 2004 to 2005, plaintiff's overall performance average was 3.0, Doc. #52, Ex. E, for 2005 to 2006, it was 3.27, Doc. #52, Ex. G, and for 2006 to 2007 it was 3.36, Doc. #52, Ex. I.

ability to work well with others.[3]  On October 11, 2005, however, Loveless e-mailed plaintiff and her

co-worker Marcia Miller regarding personnel issues.  Doc. #52, Ex. F.  Loveless stated that he had

drafted a written counseling report but decided not to file it.  Id.  The e-mail emphasized defendant's

policies regarding personal phone calls at work, flex time and breaks.  Id.  He also asked plaintiff and

Miller to put aside their personality conflict and concentrate on their jobs.  Id.

        At some point in 2006, the East Coast Chief of Operations for RadNet Management, Inc.

instructed defendant to look for ways to reduce expenses by cutting personnel wherever possible.[4]

Ruth Wilson Depo. at 11:12-12:22.  As a result, plaintiff's superiors were constantly looking for

ways to eliminate staff.  See id.; Smith Depo. at 76:19-24; Myla Matney Depo. at 10:6-10.  This

policy was the basis for a reduction in force ("RIF") pursuant to which defendant terminated

plaintiff's position.

        In late 2007, Loveless left defendant and Myla Matney took his place as plaintiff's supervisor.

Shortly thereafter, Matney began instituting changes in the Physician Support Department.  See

Doc. #52, Ex. R.  Matney required her employees, including plaintiff and Bushey, to cross-train on

---

        [3]        On plaintiff's review in March of 2005, Loveless stated that plaintiff "is outstanding
to work with," that she "is a team player and helps on a variety of projects willingly" and that her
"productivity is high and her attitude is excellent."  Doc. #52, Ex. E.
        On plaintiff's review in March of 2006, Loveless stated that plaintiff "has the most difficult
task in the office of those under my direction," that she "works diligently and exceeds at producing
work that is quite excellent" and that plaintiff had "concerns about pay."  Doc. #52, Ex. G.
        On plaintiff's evaluation in March of 2007, Loveless commented that plaintiff "has been a
take charge person when she became the lead scheduler," that she "has now a full grasp of all
aspects of the very difficult program" and that she "is a tremendous team worker and just a
wonderfully pleasant person."  Doc. #52, Ex. I.

        [4]        RadNet Management, is the parent company of defendant, and provides management
services to defendant.  Smith Depo. at 7:19 -7:25.  As previously noted, RadNet Management, which
is not a party to this suit, is the sole owner of RNMIP.  See Doc. #47 filed December 20, 2010.
Defendants – RadNet, Inc. and RNMIP – are wholly separate companies.  See id.

each other's jobs so that they could cover for each other when necessary. Matney Depo. at 13. During the cross-training process – some time in early 2008 – Matney noticed that her employees had "excess downtime." Id. She attributed the downtime to advancements in the calendar program which automated certain Calendar Coordinator responsibilities. Id. Plaintiff agreed that she did not always have enough work to fill her time, but testified that down time was "unusual." Pl. Depo. at 15:10-16:3. Matney observed that plaintiff "allow[ed] existing work to fill time" instead of being "as efficient as possible to increase productivity." Doc. #52, Ex. O. At the time, Matney noted that defendant no longer needed two Calendar Coordinators. Id.

In January of 2008, shortly after Matney took over as plaintiff's supervisor and began instituting changes to the Department, plaintiff contacted Ruth Wilson, the Human Resource Director at RadNet Management. Doc. #52, Ex. J; Pl. Depo. at 13-14. Around the same time, plaintiff also had a phone conversation with Wilson. Pl. Depo. at 13-14. In the e-mail and phone conversation, plaintiff expressed concerns that Matney and David Smith, the Practice Administrator, were discriminating against her based on age. Doc. #52, Ex. J; Pl. Depo. at 13-14. Specifically, plaintiff told Wilson that she had "considerable anxiety" regarding the departure of Loveless, and concerns about the management style of Matney and Smith. Doc. #52, Ex. J. Plaintiff told Wilson that she was uneasy about some of the changes which Matney and Smith were making, and that she was anxious because she knew that a co-worker was interested in taking her position. Id. In the e-mail, plaintiff mentioned that she was 60 years old and that she had a good work performance record. Doc. #52, Ex. J; Spicer Depo. at 13-14. Plaintiff also stated that she suspected Matney and Smith of trying to replace her with a younger employee – Bushey – by withholding information from plaintiff and shifting some of her duties to Bushey. Id. In addition, plaintiff mentioned that she was

roughly five years away from retirement.  Pl. Depo. at 13:23-14:2.  In response to plaintiff's charge of age discrimination, Wilson undertook an investigation to determine whether plaintiff's allegations had merit.  <u>See</u> Wilson Depo. at 73.

In January of 2008, plaintiff committed at least two scheduling errors.  On January 7, 2008, plaintiff mistakenly scheduled a radiologist to do "outreach" and to work late, which was against company policy.  <u>See id.</u>  On January 21, 2008, plaintiff apologized to a radiologist for a scheduling error.  <u>See</u> Doc. 52, Ex. M.

In late February of 2008, Matney asked plaintiff to give her office to Bushey and to move into a shared office with a Diana Vance.  Doc. #52 Ex. N.  Matney initially asked plaintiff, Bushey and Vance to work out the office arrangements among themselves.  Pl. Depo. 48:4-49:24.  The three agreed that Bushey would share an office with Vance and that plaintiff would stay in her office, which was traditionally reserved for the "lead person."  <u>Id.</u> 48:20-23.  Matney intervened, however, and decided that Bushey should have her own office because her role in the Materials Management department generated distracting phone and foot traffic that plaintiff's job and Vance's job did not.  <u>See</u> Doc. #52, Ex. N.  Ms. Matney asked Ms. Vance to move into plaintiff's office, but discovered that plaintiff's office would not accommodate computer cables and phone lines for two people.  <u>Id.</u> Matney therefore asked plaintiff to move out of the "lead" office and to share Vance's office.  <u>Id.</u>; Pl. Depo. 48:4-49:24.  Plaintiff was unhappy with the decision.  <u>See</u> Doc. #52, Ex. N.

On March 21, 2008, Matney gave plaintiff an overall performance rating of two – "below expectations" – on a scale of one to five.  Doc. #52, Ex. O.[5]  On plaintiff's evaluation, Matney commented that plaintiff must "demonstrate a more positive outlook," "be more consistently

---

[5]        Plaintiff's overall performance average was 2.10.  Doc. #52, Ex. O.

supportive of the team," "improve quality of work by reducing frequency of errors," "be much more flexible in terms of how work gets done" and "provide better customer service to radiologists while still conforming to group policies." Id. Plaintiff wrote on her evaluation that it was "very unfair," that she did not agree with it and that it did not take into account all of her work over the previous year. Id. The evaluation stated that defendant must provide a performance improvement plan for a "below expectations" rating. Id. Matney and Smith gave plaintiff general feedback regarding her performance, but it is unclear whether they provided plaintiff a performance improvement plan. See id.; Doc. #52, Ex. R.

Plaintiff continued to commit scheduling errors throughout the year and had a heated conversation with Matney on May 29, 2008. Doc. #52, Exs. Q and R. In late May of 2008, Matney became aware that plaintiff had failed to enter a change on the calendar and thus caused a radiologist to go to the wrong place to work. Id. On May 29, 2008, Matney asked plaintiff to her office to discuss the error. Id. Plaintiff admitted making the error but stated that she had notified the radiologist about the change by e-mail. Id. During their conversation, plaintiff became frustrated after Matney interrupted her, and plaintiff began yelling that she was "sick and tired of being harassed for no reason." Id. Plaintiff also stated that it seemed clear that Matney was trying to get rid of her and that she had "contacted corporate." Id.

At that point, Matney asked plaintiff to go with her to Smith's office. Id. Plaintiff told Smith that Matney had threatened to terminate her employment for discussing her evaluation with other employees. Id. After plaintiff expressed concerns about her evaluation and being singled out, Smith told plaintiff that she would "have to do better" and that her work "wasn't good enough." Id. He told her that she "had to improve" or he would have to "get someone in that could do the work." Id.

During their conversation, Smith also told plaintiff that she and Bushey needed to stop using a paper calendar and only use the recently enhanced physician scheduler computer program.  Id.  Plaintiff resisted the transition.  Smith Depo. at 51-52.

After the meeting on May 29, 2008, Matney drafted a written warning based on plaintiff's "substandard performance."  Doc. #52, Ex. S.  The warning stated that Matney and plaintiff had informal discussions regarding plaintiff's "excessive errors," that plaintiff had not complied with scheduling guidelines and that plaintiff must reduce her scheduling errors in the future.  See id.  It is unclear whether Matney filed this warning; the copy in the record is unsigned.  See Matney Depo. at 21:21- 25:12; 30:9-30:14.  It appears, however, that Matney sent the warning to human resources which "held" it.  See Id. at 22-23.  On May 30, 2008, Matney drafted another written warning for "substandard performance" regarding plaintiff's failure to split tasks with Bushey as Matney had instructed.  Doc. #52, Ex. T.  It is unclear whether Matney filed this warning; again the copy in the record is unsigned and it appears that  human resources "held" it.  Id.; see Matney Depo. at 21-23. Also on May 30, 2008, plaintiff e-mailed Wilson regarding the incident.  She recounted the confrontation and reiterated her claim that Matney and Smith were trying to "get rid of" her. Doc. #52, Ex. Q.

Plaintiff's scheduling errors continued after her conversation with Smith.  On June 8, 2008, a radiologist called plaintiff to correct a scheduling error.  Doc. #52, Ex. U.  On September 18, 2008, plaintiff admitted omitting dates on the December calendar.  Doc. #52, Ex. V.  On September 22, 2008, plaintiff forgot to send Smith's executive assistant, Terry Smalley, dates that radiologists needed to cover.  Doc. #52, Ex. W.  On October 2, 2008, plaintiff mis-read the calendar, thinking that a quarterly meeting had been scheduled for a time when one of its attendees was scheduled to be on

call, but the meeting had been marked as "cancelled" on the calendar. Doc. #52, Ex. X. That same day, plaintiff apologized to Matney and a radiologist for erroneously leading the radiologist to believe that he had more vacation time than he did. See Doc. #52, Ex. Y. As a result, the radiologist had to request approval from the Management Committee to borrow five days of vacation from the following year. Id. On December 23, 2008, plaintiff apologized to Bushey for getting angry because she thought Matney was hiding information from plaintiff but sharing it with Bushey. Doc. #52, Ex. Z.

In January of 2009 – a full year after plaintiff's complaint of age discrimination – Wilson finished her investigation and concluded that plaintiff's allegations were baseless. See Wilson Depo. at 73:11-73:17, 88:6-88:12, 106:17-107:19. Although Wilson did not close her investigation until January of 2009, in June or July of 2008, she had concluded that Matney and Smith were not "doing anything that was targeting [plaintiff]." Matney Depo. at 73. Wilson had no explanation for why she did not end her investigation at that point. Id. On July 25, 2008, Wilson e-mailed plaintiff that she would give plaintiff "an absolute closure date of August 8th," id., but she did not close the investigation until five months later.

In Wilson's final communication with plaintiff in January of 2009, she instructed plaintiff to follow the directions of her supervisors and make any adjustments which they requested in a professional manner. Id. On February 3, 2009, Matney wrote plaintiff a memo regarding her performance and conduct. Doc. #52, Ex. AA. The memo addressed plaintiff's concern about changes in the office and her concern that she was being singled out. Id. It emphasized the importance of minimizing errors and incorporating a "less antagonistic approach to . . . daily activities." Id. The memo also stated that Matney wanted to help plaintiff succeed but that plaintiff

must do her part.  Id.

In early 2009, Smith told Matney that defendant was looking to "cut the fat," i.e. streamline the workforce to do the work with the fewest employees.  Matney Depo. at 10:6-13.  Based on her previous observation that her employees had excess downtime and that enhancements to the scheduling program made it no longer necessary to have two Calendar Coordinators, Matney decided to eliminate one of the Calendar Coordinator positions as part of a RIF.  See id. at 9:23-10:17; 12:11-14:4, 49-50; Smith Depo. at 51:16-22; Wilson Depo. at 11:16-12:9, 15:18-16:8.

In deciding whether to retain plaintiff or Bushey, Matney used a head-to-head evaluation form which she received from defendant's human resources department.  The evaluation criteria were (1) team building, (2) initiative, (3) quality of work, (4) judgment, (5) dependability, (6) reliability, (7) flexibility and (8) team building leadership.  Doc. #52, Ex. BB.  The form required Matney to rate plaintiff and Bushey on a scale of one to ten in each area.  Id.  Matney rated Bushey higher in each category.  Id.  Bushey scored 104 points while plaintiff scored 36.  Id.  Matney based the decision on her "personal feelings" of how plaintiff and Bushey performed their jobs, as well as performance evaluations by Matney and prior supervisors.  Matney Depo. at 48:19-49:2.  Based on Matney's assessment, defendant decided to retain Bushey over plaintiff.

On April 10, 2009, defendant terminated plaintiff's employment.  Doc. #52, Ex. CC.  Plaintiff was 62 years old at the time.  Doc. #50 at 4.  Bushey was 39.  Id.  When defendant terminated plaintiff's employment, plaintiff and Bushey shared the Calendar Coordinator duties – one week plaintiff would manage the calendar, the next week Bushey would.  Matney Depo. at 52.  With Matney as back-up, Bushey is now the sole Calendar Coordinator.

During Matney's four years in charge of the Physician Support Department, the department

has gone from nine employees to four. Id. at 7:16-8:2. During plaintiff's employment, no one in defendant's management ever made any comments to plaintiff about her age. Pl. Depo. at 9:3-6.

## Analysis

Plaintiff claims that defendant terminated her employment because of age and in retaliation for her opposition to unlawful discriminatory practices, in violation of the ADEA and KADEA.[6] Doc. #50 at 7-8. Defendant argues that it terminated plaintiff's employment as part of a RIF – not her age or because of her complaints to human resources.

Plaintiff may use direct or indirect evidence to demonstrate that defendant terminated her employment because of age or in retaliation for filing a complaint of age discrimination. See Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278-79 (10th Cir. 2010); Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1201-02 (10th Cir. 2008); Cortez v. Wal-Mart Stores, Inc., 460 F.3d 1268, 1273 (10th Cir. 2006). Direct evidence demonstrates on its face that defendant terminated plaintiff's employment because of age or retaliation. See Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008), cert. denied 130 S. Ct. 69 (2009). Here, the record contains no such evidence. Therefore Court applies the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 824 (1973). See Jones, 617 F.3d at 1278-79.

Under McDonnell Douglas, plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation. McDonnell Douglas, 411 U.S. at 802; Hinds, 523 F.3d at 1201-02;

---

[6]     Because of their similarity, the Court uses the same criteria to evaluate ADEA and KADEA claims. Bittel v. Pfizer, Inc., No. 06-1195-JTM, 2007 WL 2990556, at *3 n.1 (D. Kan. Oct. 11, 2007); Veale v. Sprint Corp., No. Civ. A. 95-2379-GTV, 1997 WL 49114, at *5, n.2 (D. Kan. Feb. 3, 1997) (citing Kan. State Univ. v. Kan. Comm'n on Civil Rights, 14 Kan. App. 2d 428, 796 P.2d 1046 (1990)); see also Wood v. City of Topeka, 90 F. Supp.2d 1173 (D. Kan. 2000) (applying same analysis for KADEA and ADEA claims).

Sanders, 544 F.3d at 1105. If plaintiff satisfies her burden, the burden shifts to defendant to articulate a legitimate nondiscriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802-03; Sanders, 544 F.3d at 1105. If defendant does so, the burden shifts back to plaintiff to show a genuine issue of material fact that defendant's stated reason is pretextual. See McDonnell Douglas, 411 U.S. at 804; Wilkerson v. Shinseki, 606 F.3d 1256, 1267 (10th Cir. 2010). If plaintiff so shows, she overcomes the hurdle of summary judgment. Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).

## I.    Discriminatory Termination

Both the ADEA and KADEA prohibit an employer from discharging or otherwise discriminating against any individual because of age.[7]

### A.    Prima Facie Case

To establish a prima facie case of age discrimination in a RIF context, plaintiff must show that (1) she was within a protected age group – 40 or older; (2) she was doing satisfactory work; (3) defendant terminated her employment; and (4) some evidence suggests that defendant intended to discriminate against plaintiff in reaching its RIF decision. Hinds, 523 F.3d at 1195. Defendant concedes that plaintiff was within a protected age group and that it terminated plaintiff's employment, but argues that plaintiff has not satisfied the remaining elements.

---

[7]    The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).
    The KADEA provides that "[i]t is an unlawful employment practice . . . [f]or an employer, because of the age of a person, to refuse to hire or employ the person, to bar or discharge the person from employment or to otherwise discriminate against the person in compensation or in terms, conditions or privileges of employment." K.S.A. § 44-1113.

### 1.    *Satisfactory Work*

The record contains conflicting evidence with respect to the second element.  Defendant asserts that for more than one year prior to the termination of her employment, plaintiff was not doing satisfactory work.  On March 21, 2008, Matney rated plaintiff "below expectations," based on her performance and inability to work well with others.  Doc. #52, Ex. O.  Plaintiff's e-mail records indicate that she made several scheduling errors and became increasingly difficult to work with and manage.  See Doc. #52 Exs. L-N, R, U, V, Z.  The record also shows that plaintiff disagreed with her performance evaluation because it did not take into account all of her work and that her supervisors were singling her out because no matter what plaintiff did she could not please Matney.  See Doc. #52, Exs. J, O and R.  Plaintiff's subjective assessment of her own performance is insufficient to raise a genuine issue of material fact, Simms v. Oklahoma, 165 F.3d 1321, 1329-30 (10th Cir. 1999), but viewing the record as a whole in the light most favorable to plaintiff and drawing all reasonable inferences in her favor, the record reveals a genuine issue of material fact with respect to the quality of plaintiff's work.

### 2.    *Discriminatory Intent*

In the RIF context, plaintiff may satisfy the fourth element – discriminatory intent – by showing that defendant discharged plaintiff but retained a younger employee who held a similar position or that defendant treated younger employees more favorably than it treated plaintiff.  See Hinds, 523 F.3d at 1195; Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1167 (10th Cir. 1998).  Here, defendant discharged plaintiff in favor of retaining Bushey who was younger and shared scheduling functions with plaintiff.  The record easily satisfies this element of plaintiff's prima facie case.

**B.    Legitimate Nondiscriminatory Reason**

The burden thus shifts to defendant to state a legitimate nondiscriminatory reason for terminating plaintiff's employment. Defendant has done so; it asserts that it terminated plaintiff's employment as part of a RIF. See Sanders, 544 F.3d at 1106. The burden now shifts back to plaintiff to show that the RIF was pretextual, i.e. subterfuge for age discrimination. Young v. Dillon Cos., 468 F.3d 1243, 1250 (10th Cir. 2006).

**C.    Pretext**

Evidence of pretext can take a variety of forms. See Aramburu v. Boeing Co., 112 F.3d 1398, 1411 n.10 (10th Cir. 1997). Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Morgan, 108 F.3d at 1323 (quotations omitted). In a RIF case, a plaintiff typically can demonstrate pretext with evidence that (1) her termination does not accord with the RIF criteria; (2) defendant deliberately falsified or manipulated the RIF criteria in order to terminate her; or (3) the RIF was generally pretextual. See Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1193 (10th Cir. 2006). Plaintiff can show pretext under the third category by showing that defendant actively sought to replace a number of RIF-terminated employees with new hires during the RIF time frame. Id. In a typical non-RIF context, plaintiff can also show pretext based on "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." Id. (quoting Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (10th Cir. 2002)).

-14-

Regardless how plaintiff goes about showing pretext, she must show "that something more nefarious might be at play," not just that defendant "got it wrong." Johnson v. Weld Cnty., 594 F.3d 1202, 1211 (10th Cir. 2010). Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment. Satterlee v. Allen Press, Inc., 443 F. Supp.2d 1236, 1245 (D. Kan. 2006).

In examining whether defendant's proffered reason is pretextual, the Court must "look at the facts as they appear to the person making the decision to terminate plaintiff." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir. 2000). The Court's role is not to second guess an employer's business judgment. Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004). The question is not whether defendant's proffered reasons were wise, fair or correct, but whether defendant honestly believed those reasons and acted in good faith upon those beliefs. Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004). At the same time, courts "view with suspicion a corporate restructuring justification used to counter a discrimination claim where the plaintiff's position was the only one eliminated." Plotke v. White, 405 F.3d 1092, 1100 n.9 (10th Cir. 2005).[8]

Here, the record does not raise a genuine issue of material fact whether defendant's termination of plaintiff's employment was inconsistent with RIF parameters. Nor does it suggest that defendant deliberately falsified or manipulated RIF criteria to terminate plaintiff's employment because of age. RadNet Management set the RIF parameters broadly – to reduce overhead by eliminating personnel wherever possible. At some point in early 2008, when Matney began to cross-

---

[8]     It is unclear whether plaintiff was the only employee to lose her job as part of defendant's policy to reduce overhead by reducing staff, but defendant did not eliminate any other positions at the time it terminated plaintiff's employment. Therefore, construing the record in the light most favorable to plaintiff, the Court assumes that only plaintiff's position was eliminated.

train her employees, she noticed that they had "a lot of excess downtime." Matney Depo. at 13:11-24. At least in part, Matney attributed this to an upgrade to defendant's calendar program. At the time, Matney noted that defendant no longer needed two Calendar Coordinators. When Smith informed Matney of defendant's "cut the fat" policy in early 2009, they decided to eliminate a Calendar Coordinator position. The record reflects that a calendar program upgrade had automated the scheduling function and that Matney and Smith had asked plaintiff and Bushey to move from the traditional paper-based calendar to a computer-based calendar, which plaintiff resisted. Plaintiff agreed that she did not always have enough work to fill her time. Pl. Depo. at 15:10-16:3. Matney observed that plaintiff "allow[ed] existing work to fill time" instead of being "as efficient as possible to increase productivity." Doc. #52, Ex. O.

Even if Matney overestimated the downtime of her employees, the Court's role is not to second-guess defendant's good faith business judgments. Stover, 382 F.3d at 1076. The record does not suggest that Matney abused the RIF to terminate plaintiff's employment because of age. Defendant has not sought to replace plaintiff, and in fact it has not replaced her. The fact that plaintiff was close to retirement, without more, does not suggest age discrimination. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611-12; Reeder v. Wasatch Cnty Sch. Dist., 359 Fed. Appx. 920, 925 (10th Cir. 2009).

Defendant's overall treatment of plaintiff does not suggest that the RIF was a pretext for age discrimination. Admittedly, the criteria that Matney used to evaluate plaintiff's continued employment in the RIF were in large part subjective. In deciding whether to retain plaintiff or Bushey, however, Matney used a head-to-head evaluation form which she received from defendant's human resources department. The form required Matney to rate plaintiff and Bushey on a scale of

one to ten in each of eight areas. Bushey scored markedly higher in each category. In addition, Matney based her decision on "personal feelings" of how plaintiff and Bushey performed their jobs, as well as performance evaluations by Matney and prior supervisors.

The use of subjective criteria in reaching an employment decision may be evidence of pretext. Garrett, 305 F.3d at 1217. Subjective considerations, however, are not unlawful per se. Bauer v. Bailar, 647 F.2d 1037, 1045-46 (10th Cir. 1981); Walker v. Faith Techs., Inc., 344 F. Supp.2d 1261, 1275 (D. Kan. 2004). Here, defendant produced the rubric that Matney used to make her selection. See Garrett, 305 F.3d at 1217. The record contains no evidence that plaintiff was more qualified, or even equally qualified, for the position. See Simms, 165 F.3d at 1350. Moreover, the record does not suggest that Matney used subjective considerations as a tool to terminate plaintiff's employment because of age.

Even when viewing the record in the light most favorable to plaintiff and drawing all reasonable inferences in her favor, the record does not raise a genuine issue of material fact whether defendant's decision to terminate plaintiff's employment as part of the RIF was pretext for age discrimination. On this record, no reasonable jury could find for plaintiff on this clam. Defendant is therefore entitled to summary judgment on this claim.

**II.     Retaliation**

The ADEA and KADEA prohibit an employer from discriminating against an employee for opposing any practice made unlawful by the Acts.[9]  See Hinds, 523 F.3d at 1201-02; White v.

_____

[9]     29 U.S.C. § 623(d) states in part as follows: "It shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section."
K.S.A. § 44-1113(a)(5) provides in part as follows: "It is an unlawful employment practice (continued...)

Tomasic, 31 Kan. App.2d 597, 601, 69 P.3d 208, 211 (2003) (citing Woods v. Midwest Conveyor Co., 231 Kan. 763, 648 P.2d 234 (1982) (superseded by statute on other grounds)). The McDonnell Douglas framework also applies to plaintiff's retaliation claims. Lujan v. Walters, 813 F.2d 1051, 1058 (10th Cir. 1987). To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination; (2) she suffered materially adverse action; and (3) a causal connection existed between the protected activity and the materially adverse action. Hinds, 523 F.3d at 1202.

Defendant does not dispute the first two elements of plaintiff's claims, but argues that as a matter of law no causal connection exists between the two. Doc. #52 at 18. To determine whether a causal connection exists, the Court must first determine when plaintiff engaged in protected opposition and when defendant took materially adverse action against her.

An employee engages in protected opposition when she conveys to her employer concern that the employer has engaged in unlawful employment practices. Hinds, 523 F.3d at 1203. Plaintiff first conveyed concern about potential age discrimination in January of 2008, in an e-mail to Wilson and a telephone conversation with her around the same time. On May 30, 2008, plaintiff raised similar concerns in an e-mail to Wilson. The Court assumes that all three communications constitute protected opposition.

The critical inquiry at the prima facie stage is whether plaintiff has demonstrated that defendant terminated her employment under circumstances which give rise to an inference of

---

⁹(...continued)
based on age . . . [f]or any employer . . . to discharge, expel or otherwise discriminate against any person because the person has opposed any practices or acts forbidden under this act or has filed a complaint . . . under this act."

unlawful retaliation.[10]  See Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1171

(10th Cir. 2006); Garrett, 305 F.3d at 1221.  Plaintiff may satisfy her initial burden by showing that

the termination of her employment was "very closely connected in time to the protected activity."

Anderson v. Coors Brewing, 181 F.3d 1171, 1179 (10th Cir. 1999).  The Tenth Circuit has held that

a six-week gap between protected activity and adverse action may be sufficient, Ramirez v. Okla.

Dep't of Mental Health, 41 F.3d 584, 596 (10th Cir. 1994), overruled on other grounds by Ellis v.

Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1194-97 (10th Cir. 1998), but that standing alone a three-

month gap is insufficient to establish causation, see Richmond v. ONEOK, Inc., 120 F.3d 205, 209

(10th Cir. 1997).  Metzler, 464 F.3d at 1171-72; Meiners v. Univ. of Kan., 359 F.3d 1222, 1231 (10th

Cir. 2004); see also Anderson, 181 F.3d at 1179 (assuming two month and one week gap sufficient).

Roughly 15 months passed between plaintiff's original complaints of age discrimination in

January of 2008 and the termination of her employment in April of 2009.  More than 11 months

passed between plaintiff's complaint on May 30, 2008 and the termination of her employment.  The

time gaps between plaintiff's complaints and the termination of her employment are too long to raise

a genuine factual issue of causal connection.  See ONEOK, 120 F.3d at 209.  Therefore, the record

must contain additional evidence to establish causation.  Hysten v. Burlington N. & Santa Fe Ry. Co.,

296 F.3d 1177, 1183-84 (10th Cir. 2002).

The Tenth Circuit has recognized that protected conduct closely followed by adverse action

---

[10]        With respect to materially adverse action, the pretrial order limits plaintiff's claim
to termination of employment.  Pretrial Order (Doc. #50) filed January 10, 2011 at 7.  As a result
the Court need not address whether other actions by defendant are  independently actionable.  See
Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir.), cert. denied, 518 U.S. 1019 (1996);
Lebow v. Meredith Corp., 484 F. Supp.2d 1202, 1221 (D. Kan. 2007); Burlington N. Santa Fe R.R.
Co. v. White, 548 U.S. 53, 69-70 (2006).

may justify an inference of retaliatory motive. <u>Marx</u>, 76 F.3d at 329. A "pattern of retaliation" that begins soon after plaintiff's protected action may support an inference of retaliation, even though it does not culminate in termination until later. <u>Id.</u>; <u>see</u> <u>Hysten</u>, 296 F.3d at 1183-84. But adverse employment actions remote in time from protected action "undercut an inference of retaliatory motive." <u>Hysten v. Burlington N. Santa Fe R.R. Co.</u>, 167 F. Supp.2d 1239, 1246 (D. Kan. 2001) (citing <u>Burrus v. United Tel. Co.</u>, 683 F.2d 339, 343-44 (10th Cir. 1982)), <u>aff'd</u>, 296 F.3d 1177 (10th Cir. 2002). For example, in <u>Marx</u>, the plaintiff filed an FLSA action in October of 1992 and defendant terminated his employment 20 months later in June of 1994. 76 F.3d at 326-27. The Tenth Circuit held that the pattern of retaliatory conduct, which included "writing up" plaintiff shortly after he filed suit, demoting him for lying about discussions related to an FLSA questionnaire and defendant's use of discovery in the FLSA action to dredge up information concerning unrelated wrongdoing, was sufficient to raise genuine issues of material fact concerning defendant's motivation in terminating plaintiff's employment. <u>Id.</u> at 329. The same is true here.

Viewing the evidence in the light most favorable to plaintiff and drawing every reasonable inference in her favor, the record reflects that in the 15 months between plaintiff's initial complaint of age discrimination and defendant's termination of her employment, Matney forced plaintiff out of the lead scheduler's office, gave plaintiff a "below expectations" performance review for the first time in at least three years and without providing a performance improvement plan,[11] threatened to

_____

[11]     In <u>Metzler</u>, the Tenth Circuit stated that it does not infer pretext where an employee is treated differently by different supervisors because "any difference may be the result of [a] different supervisor's reactions." <u>Metzler</u>, 464 F.3d at 1175-76. In that case, the court noted that plaintiff's performance reviews before and after invoking her FMLA rights were not all that different. <u>See</u> <u>id.</u> at 1175. Here, plaintiff's performance reviews by Loveless and Matney are substantially different. And unlike <u>Metzler</u>, the change in defendant's treatment of plaintiff did not

(continued...)

terminate plaintiff's employment for discussing her performance evaluation, drafted two written warnings and actually issued a warning-type memo just two months before terminating plaintiff's employment. It also raises a genuine issue of material fact as to whether Wilson artificially extended time between plaintiff's complaints and the termination of her employment by prolonging her investigation of plaintiff's claims at least five months past the point when she determined that Matney and Smith had done nothing wrong. The termination of Wilson's investigation coincided with Matney's decision to eliminate a Calendar Coordinator position and her warning-type memo. All of this culminated in the termination of plaintiff's employment through a RIF in which her position was the only one eliminated. Notwithstanding the stated reason for terminating plaintiff's employment, the record raises a genuine issue of material fact whether defendant's RIF was a pretext for retaliation. These issues are for the trier of fact. Therefore, the Court overrules defendant's motion for summary judgment on plaintiff's retaliation claims.

**IT IS THEREFORE ORDERED** that <u>Defendant's Motion For Summary Judgment</u> (Doc. #51) filed January 20, 2011 be and hereby is **SUSTAINED IN PART**. The Court sustains defendant's motion as to plaintiff's age discrimination claims and overrules it as to plaintiff's retaliation claims.

---

[11](...continued)
occur at the same time as a departmental reorganization which imposed higher expectations across the board, <u>see</u> <u>id.</u> (though defendant later implemented such changes), <u>see</u> Doc. #52, Ex. AA. In addition, Matney's negative performance evaluation came shortly after plaintiff's age discrimination complaint, immediately after she forced plaintiff out of her office and after plaintiff committed only two scheduling errors. Although the Court does not sit as a super personnel director, second-guessing defendant's good faith management decisions, viewed in the light most favorable to plaintiff, the temporal proximity of Matney's negative performance evaluation to plaintiff's complaint of age discrimination raise a genuine issue of material fact as to whether defendant acted with a retaliatory motive.

Dated this 31st day of May, 2011 at Kansas City, Kansas.

s/  Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge